## UNITED STATES DISTRICT COURT
## THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

**MICHAEL TOOKENAY**

     **Plaintiff,**                                   **CASE NO.:**

**v.**

**HOTWIRE COMMUNICATIONS, LLC,**      **DEMAND FOR JURY TRIAL**

     **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, MICHAEL TOOKENAY (hereinafter Plaintiff) by and through his undersigned counsel, and files this Complaint against the Defendant, HOTWIRE COMMUNICATIONS, LLC (hereinafter Defendant), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1. Plaintiff alleges violation(s) of the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

2. The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and to prevent abusive "robo-calls."

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 191 L.Ed. 2d 881 (2012).

4. "Senator Hollings, the TCPA's sponsor, describes these calls as 'the scourge of modern civilization, they wake us up on in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." See Mims at 752 (quoting 137 Cong. Rec. 30, 821 (1991)).  Senator Hollings "presumabl[y] intended to give telephone subscribers another option; telling the autodialers to simply stop calling." Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1256 (11th Cir. Ct. App. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet on Consumer Protection Proposal*, FEDERAL COMMUNICATIONS COMMISSION (2016), https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal (last visited Apr 26, 2017).

6. Likewise, the FCCPA was designed and adopted to reinforce individual consumer's rights at a state level.

**JURISDICTION AND VENUE**

7. Jurisdiction and venue for the purposes of this action, are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii).

*See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 748 (2012); *and Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. Ct. App. 2014).

9. Venue is proper in this District because the Plaintiff resides in this District (Palm Beach County, Florida), the violations occurred in in this District and the Defendant transacts business within this District.

10. Plaintiff Michael Tookenay is a natural person, and citizen of the State of Florida, residing in Palm Beach County, Florida.

11. Plaintiff is a "consumer" as defined in Fla. Stat. § 559.55(8).

12. Plaintiff is an "alleged debtor."

13. Defendant is a creditor operating from Bala Cynwyd, Pennsylvania and is a "creditor" as that term is defined by Section 559.55(5).

14. At all material times herein, Defendant attempted to collect a debt, specifically an improper debt relating to an apartment telecommunications service account (the Debt).

15. The alleged Debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute § 559.55(6), as it arises from personal, family, or household use.

16. At all material times herein, Defendant is a "person" subject to Florida Statutes § 559.72. *See* Florida Statutes, §§ 559.72(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

17. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

18. Defendant attempted to collect on an alleged consumer debt from Plaintiff.

19. Defendant is a telecommunications company with its principal place of business at 3 Bala Plaza East, 7th Floor, Bala Cynwyd, PA 19004, and which conducts business within the

State of Florida. Its Florida license number is #EF20000859.

20. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number at issue, (561)-XXX- 2751 (hereinafter "cellular telephone"); and was the called party and recipient of Defendant's hereafter described calls.

## GENERAL ALLEGATIONS

21. Defendant is a company that specializes in providing cable and internet service to multi-family dwellings like apartment complexes and condominiums.

22. Plaintiff and his wife, Jessica, lived in an apartment complex in South Florida between January 2015 and January 2016. As part of their rental, Defendant provided cable service to the apartment complex.

23. During the time he lived in the apartment, between January 2015 and January 2016, he paid his bill to Defendant.

24. Plaintiff and his family moved out of the apartment complex on January 26, 2016. They never returned to that apartment complex.

25. For some heretofore unknown reason, in January 2016, Defendant erroneously opened another account for the same apartment with Plaintiff's name on it (the "Account"; Defendant has this information linked to a Customer No. 1732759).

26. Evidently, the Account went into default.

27. Beginning in January 2018, Defendant began contacting Plaintiff attempting to collect on the Account.

28. Over the next several months, Plaintiff has sent numerous emails and sent over documentation proving that he and his family were not living in the apartment when the service on the Account supposedly started.

29. Defendant has failed to even acknowledge Plaintiff's request to pull the account much less stop trying to collect.

30. As recently as January 14, 2019, Defendant has **billed Plaintiff for the erroneous account**. *See Exhibit A, Online Bill.*

### TCPA ALLEGATIONS

31. Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone with such frequency as can reasonably be expected to harass and in an effort to collect an alleged consumer debt.

32. Beginning in January 2018, Plaintiff began receiving autodialed calls to his cellular telephone number (561-XXX-2751).

33. Because he had no account with Defendant, Plaintiff never gave permission or consent to call his cell phone regarding the Account.

34. Beginning in January 2018, Plaintiff has repeatedly answered Defendant's collection calls, telling Defendant to **stop calling.**

35. However, despite this obvious revocation, he was called almost daily, and sometimes multiple times a day from January 2018 until the present. *See Exhibit B*, **Partial Phone Records.**

36. Upon information and belief, some or all of the calls Defendant placed to Plaintiff's cellular telephone were placed using an "automatic telephone dialing system" (hereinafter "Autodialer"), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

37. Furthermore, each of the calls at issue were placed by Defendant using an artificial or prerecorded voice, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).  This is particularly obvious looking at the time stamps of the calls made to Plaintiff's cell phone. Many, if not most, of these calls left an exactly 8-second message – an indication of a robotic messaging system. ***See Exhibit B.***

38. Upon receipt of the calls, Plaintiff's caller identification feature identified the calls were being initiated from, but not limited to, the telephone number 1-855-832-0601[1] and 1-855-509-9922. ***See Exhibit B.***

39. Each subsequent call Defendant placed to Plaintiff's cellular telephone number was done so after Plaintiff explicitly revoked consent and without his express consent.

40. Each subsequent call Defendant placed to Plaintiff's cellular telephone number was knowingly and willfully placed to his cellular phone without express consent and for an account that was not even his.

41. Each of the Plaintiff's requests for the harassment to end went ignored.

42. Defendant called Plaintiff on his cellular telephone **over two hundred times** since January 2018 in an attempt to collect an alleged consumer debt that he did not owe.

43.  Due to the extreme volume of calls Plaintiff received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call he received from Defendant.

44. Defendant has, or should be in possession and/or control of, call logs, account notes, autodialer reports and/or other records that detail the exact number of calls it placed to Plaintiff.

45. Despite actual knowledge of its wrongdoing, Defendant continued its campaign of abuse

---

[1] This number is already recognized as coming from Defendant Hotwire Communications.

by continuing to call Plaintiff despite not having Plaintiff's express consent to call his cellular telephone and being clearly on notice that the Account was **never Plaintiff's to begin with** and therefore, it could never have express consent.

46. Defendant has corporate policies and/or procedures to use an Autodialer or artificial voice or prerecorded message, and to place autodialed calls, just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, including Defendant, to permit, elect, or invoke the removal of Plaintiff's cellular number from Defendant's call list.

47. The structure of Defendant's corporate policies and procedures permits the continuation of calls to individuals like Plaintiff, despite these individuals revoking any consent, or perceived consent, Defendant may have believed it had to place such calls.

48. Defendant's corporate policies and procedures provided no means for Plaintiff to have his cellular number removed from Defendant's call list; or, otherwise invoke and/or request the cessation and/or suppression of calls to Plaintiff from Defendant.

49. Defendant has corporate policies or procedures of using an Autodialer or an artificial voice or prerecorded message to collect alleged debts from individuals, such as Plaintiff, for its financial benefit.

50. Plaintiff expressly revoked consent to Defendant's placement of telephone calls to Plaintiff's cellular telephone number by the use of an Autodialer or an artificial voice or prerecorded message immediately upon Defendant's placement of the calls.

51. Defendant knowingly employs methods and/or has corporate policies and/or procedures designed to harass and abuse individuals such as Plaintiff.

52. Defendant knowingly employs methods that do not permit the cessation or suppression of

7

autodialed calls to Plaintiff's cellular telephone.

53. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called, especially when the debt claimed is completely erroneous.

54. None of Defendant's telephone calls placed to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

55. Further, the alleged Account debt was not "guaranteed by the United States" and the calls made were not "solely to collect a debt owed to or guaranteed by the United States." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

56. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in *Patriotic Veterans, Inc. v. Zoeller*, "every call uses some of the phone owner's time and mental energy, both of which are precious." In this case, Plaintiff has used nearly every ounce of his mental energy merely dealing with Defendant's Kafkaesque bureaucracy.

57. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

58. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of his time. The time Plaintiff spent on answered calls was unnecessary because he repeatedly asked for calls to stop. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of

important missed communications.

59. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

60. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

61. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services.

62. As a result of the aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy and the intrusion upon his right of seclusion. Plaintiff also suffered from stress, embarrassment, indignation, emotional distress, mental distress, pain and suffering, and the phone calls aggravated an existing illness. Additionally, Plaintiff experienced loss of happiness, concentration, sleep, privacy, and reputation. Furthermore, Plaintiff was hindered by the loss of phone battery life and phone minutes as well as the cost of additional charging, and the intrusion upon and occupation of the capacity of his cell phone. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt allegedly owed by Plaintiff.

## COUNT I (Violation of the TCPA)

63. Plaintiff incorporates and realleges paragraphs one (1) through sixty-two (62) as if fully set

forth herein.

64. Defendant willfully and repeatedly violated the TCPA with respect to Plaintiff, especially for each of the Autodialer calls it made to Plaintiff's cellular telephone after Plaintiff notified and requested Defendant that he wanted the calls on an Account that was *never his* to stop.

65. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an Autodialer or artificial voice or prerecorded voice message without Plaintiff's prior express consent and in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II (Violation of the FCCPA)

66. Plaintiff re-alleges and fully incorporates Paragraphs one (1) through sixty-two (62) above as if fully stated herein.

67. At all times relevant to this action, Defendant is subject to and must abide by the law of the State of Florida, including, without limitation, Fla. Stat. § 559.72.

68. By refusing to stop communicating directly with Plaintiff after being on repeated notice that it was not his account, along with excessive collection robo-calls to his cell-phone, Defendant violated Fla. Stat. § 559.72:

  a. "[W]illfully engaging in conduct with such frequency as can reasonably be expected to harass the debtor;" Fla. Stat. § 559.72(7); and

10

    b.   "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

69. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Fla. Stat. § 559.77.

70. As a result of Defendant's violations of the FCCPA, Plaintiff is entitled to actual damages, statutory damages (up to $1000.00), and reasonable attorney's fees and costs pursuant to Fla. Stat. § 559.77.

71. Additionally, due to Defendant's complete disregard for basic requests to stop and investigate the erroneous Account, § 559.77 provides a court may award punitive damages as well as equitable relief to Plaintiff such as enjoining further illegal collection activity.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## <u>TRIAL BY JURY</u>

72. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

Dated this 28th of February, 2019,

**MAX HUNTER STORY, P.A**
<u>/s/ Max H. Story, Esq._____</u>
Max Story, Esquire
Florida Bar No. 0527238
Austin J. Griffin, Esquire.
Florida Bar No. 0117740
328 2ND Avenue North

Jacksonville Beach, Florida  32250
Telephone: (904) 372-4109
Fax: (904) 758-5333
max@storylawgroup.com
*Attorneys for Plaintiff*